Good morning. May it please the Court, I will reserve, if I may, a couple of minutes for rebuttal. My name is Alan Bentley. I represent the petitioner in this matter, Dr. George Mathew. This is a petition pursuant to Title 21 U.S. Code Section 877 for review of the decision of the Deputy Administrator of the Drug Enforcement Administration to deny Dr. Mathew's application for renewal of his DEA registration. The registration that gives a physician authority to prescribe controlled substances. In 2003, a young physician left academia and entered the private practice of medicine. He had been an excellent student. He had received his medical degree at the University of Athens, Greece. He had earned a Ph.D. in immunology at a leading American university. He had published in professional journals. In 2003, he left a research position with the Fred Hutchinson Cancer Research Center and began working in one of the least desirable roles in medicine as a locum tenens or fill-in physician in the emergency rooms of small rural hospitals where he provided coverage so that the full-time physicians at such facilities did not need to work in the evenings or on weekends and holidays. I don't mean to interrupt your presentation just, you know, getting started here, but the clock is counting down. I think we've pretty much all read that. Could you tell me, you know, where did the Deputy Administrator go wrong in rejecting the ALJ's recommendation? I mean, what is the heart of your argument? There are two reasons why the decision of the Deputy Administrator should be reversed. First, the Deputy Administrator applied a rule of decision that conflicts with the Administrative Procedure Act, and second, the Deputy Administrator failed to address a significant argument presented by the physician about the absence of evidence, and I'll move right into discussion of those points if I may. The parties agree that the Administrative Procedure Act governs proceedings for the revocation of a physician's federal authority to prescribe controlled substances. The Administrative Procedure Act provides that the proponent of an order has the burden of proof. Proof must be by substantial evidence which is... You mean persuasion when you say that, correct? Persuasion? Yes. Not necessarily a burden of going forward. Well, I think they're the same in this case. Well, they go forward with evidence, then he's supposed to come up with evidence, and then they can rebut it, and ultimately they have the burden of persuasion, right? Yes. All right, so they came forward with some evidence. Yes. And then they said that they would presume that his signature was authorized on the documents that were utilized by Hain-Almed's to distribute drugs. Let me ask you something about that. How about E-Drugstore? Yes, Your Honor. What about that? We do not deny that he was involved in E-Drugstore. If the deputy administrator had ruled that Dr. Matthew, his transgressions were limited to E-Drugstore, this would be a very different case. Well, but... Listen, but then... You so state, but they made it quite clear that they also relied on E-Drugstore. And in E-Drugstore alone, I guess we know that he wrote about 9,300 prescriptions. The number that was referenced by the Medical Quality Commission was 2,700. Let's go this way. You made it perfectly clear that that was just a sampling. Correct. He made it perfectly clear that he got about $30,000 out of the deal. He also said about 300 of those were the narcotic descriptions. He got $10 apiece for them. He got $3 apiece for the other. Now, I won't go through all the mathematics for you, but that makes it... If he got 30,000 bucks, which he says, he wrote 9,300 prescriptions in order to get $30,000. So, there we've got E-Drugstore. Wouldn't that all by itself be enough to uphold the thing? You would think that it might be. And one has to ask, why did the Deputy Administrator reject the Administrative Law Judge's conclusions with respect to HeyNow Meds? And I think the answer to that lies in the ALTRA case cited in our brief, which is similar in the sense that the ALJ's recommendation was rejected by the Deputy Administrator. In that case, the Deputy Administrator rejected the recommendation because they found that ALRA Laboratories was a repeat offender and had consistently had record-keeping violations, had never cleaned up its act. Well, he's got this issue, though, with Fernandez, who's got this connection with HoneyNeds or whatever, however it's pronounced. Rodriguez. He flies all the way from Seattle to Miami to meet with the guy after the E-Drugstore, isn't it? I believe toward the end of the E-Drugstore period. Doesn't he acknowledge that this is kind of a different entity, but he also authorizes the use of his prescription number for another... For non-narcotic medicines, for alleged drugs. Well, couldn't the Deputy Administrator draw a reasonable inference, though, that given Fernandez's connection with this, others, that some conclusion could be drawn that he's connected with this HoneyNeds? That is what the ALJ found, not that he was connected, but that he had failed to safeguard his number and license from misuse by others. I do not see how the Deputy Administrator could conclude without more evidence that he was connected with a second company. And to go back to the point I was making... The second company, I mean, you had that completely within your power to disprove. I mean, the burden remained on the DEA, but your client could have come forward with his bank records to show that there had been no payments transferred to him from this HoneyNeds, and he didn't do that. He's still proving a negative, Your Honor, and the DEA could well have inferred that there were other accounts that he wasn't producing. Go ahead, finish your... I just want to ask you, though, you point to these errors when you started out by the burden of persuasion. You said they shifted it to Dr. Matthew, and that they erred in drawing a negative inference, correct? They erred in failing to draw a negative inference from the failure of their agency to... Well, but they also drew an inference from his failure to testify. Yes. The Deputy Administrator did. Yes. And then you complain that they didn't draw a favorable inference on his behalf when they didn't present witnesses who were involved in the Hay-Nomads conspiracy, correct? Yes, Your Honor. Okay, so let me ask you this. Why do these alleged... There is substantial evidence in the record. Why... No doubt there's substantial evidence about... Why do these alleged procedural deficiencies make a difference? The Deputy Administrator, in effect, if you read the... When I read her conclusions, treated him as a repeat offender, and as in the Al-Ra case, rejected the ALJ's recommendation because they saw him as someone who did not learn from E-Drugstore, went on, got involved with Hay-Nomads. If the case had been limited to E-Drugstore, we would have a completely different ballgame in the sense that E-Drugstore was thoroughly vetted with the Medical Quality Assurance Commission. But they're not bound by what the Medical Quality Assurance Commission says, are they? They are bound to consider that as one factor, and if you... When I read the Deputy Administrator's decision, she somewhat misconstrues our position and says, well, it's not this positive, it's not this positive. Granted, it's not this positive, but it is a statutory factor. And from the MCWAC's decision to allow him to continue practicing in the emergency room only, which was their original probationary order, they put him in a setting where he would, by definition, need at times to prescribe controlled substances. So what you're saying... Your argument is that had they not drawn a negative inference regarding his signature, that then the only evidence before the Administrator would have been relating to the earlier... Yes, Your Honor. And that's it? That's the only... The only case in which they presented substantial evidence was on the E-Drugstore. Well, Fernando Rodriguez, he was a separate group, wasn't he, from the E-Drugstore? Yes, but it was not... So he's involved with two groups, not just the E-Drugstore, but by his own admission, he's involved with a second group. That's correct. At the end of his E-Drugstore involvement, and for the purpose of prescribing non-controlled substances, non-narcotic legend drugs. And he got, what, $30 a prescription from them? I don't recall what the record said on that, Your Honor. It's a relatively small amount. Does the purpose... And it was a small number of prescriptions also. Does the purpose matter? I assume that, or I take it, that what he was doing... He did do some prescriptions for that other outfit, did he? For... Non-narcotic. Abel Rodriguez, yes. He did. He was La Familia. And he did... Did he do those properly? No. Following the proper procedures? No. So he was still perfectly willing not to use proper procedures, is that correct? Back in 2004, during that early time period, for non-narcotic and non-DEA-controlled drugs in a small, limited number of cases before he decided that he didn't want to be involved with that individual. Is your best argument that there was an abuse of discretion, given the four or five years that he was under some kind of supervision and seemed not to have problems that... I mean, wouldn't your client have been better off kind of admitting and coming forward with all the records and then making an argument, throwing himself on the administrator's doorstep, saying, I was guilty, I'll reform, and I've been good for the last four years? Well, he could have done that. He could have come in and said, I didn't do anything in connection with HeyNow Meds, and they could have said, he's intransigent and he fails to admit what he did. And I think it was that latter assessment that led us to decide to rely on the burden and the inability to provide more than a scintilla of evidence that he was involved with the HeyNow Meds organization. Did you want to save some time for... I do, and I'm about there. Thank you. Thank you. Good morning. May it please the Court, Anita Gay from the Department of Justice on behalf of the Drug Enforcement Administration. The Deputy Administrator's decision is supported by substantial evidence and is not arbitrary and capricious. Let me begin by discussing one of the issues just raised by my opposing counsel when he stated that the Deputy Administrator's decision, that one of the flaws is that she improperly shifted the burden of proof. As you can see from the references cited in our brief, there is significant DEA precedent that once the DEA attorneys have come forward and established by a preponderance of the evidence, then the burden does shift to the registrant to establish that the continued registration or the granting of a registration... How can that be under the APA? It can be because it is an administrative proceeding and the burden... The agency, isn't it their burden to... They're claiming that he's... I forget what the test is, that he's giving him... reauthorizing his certificate is not in the public... The specific language under Section 21.8.23.F is under Subsection 5 of the five statutory factors that such other conduct which may threaten the public health and safety... The agency is taking that position. Why don't they bear the burden of persuasion throughout the entire process? Well, once they have satisfied that burden, and that is what the... There is actually... There is not that much difference between what the Administrative Law Judge and what the Deputy Administrator decided. They both found that a prima facie case had been established at the... What's the definition, though? Is a prima facie case necessarily a case proven by a preponderance? Yes. Yes, they both found that the DEA attorneys had established by a preponderance of the evidence that Dr. Matthews' continued registration was not in the interest of the public, that based on his... the demonstration of how he complied with state and federal law in handling controlled substances, his experience in handling controlled substances, that it was not in the public interest to allow him to be... I understand that's the final conclusion. I'm talking more about your formulation, which I thought you were saying that once you make a prima facie case, that the other side has the burden of then coming forward. Yes. Once they had met their burden and he presented nothing to refute that, nothing to undermine what they had presented, what he... So you're talking more in terms of the burden... who has the burden of producing evidence? Yes, Your Honor. Not so much the burden of persuasion. There's a difference. Yes, yes, and... You did say burden of persuasion shifts to him, and that's something that's been going on in this case. And it does sound, Judge Podesta, what you're really talking about... Is the burden of proof. No, no, no. Don't talk about burden of proof. The trouble with the phrase burden of proof is it historically encompasses both burden of persuasion and burden of going forward with the evidence, and it confuses people. So you're saying you have the burden of going forward with a prima facie case. Is that true? That is correct. He then has the burden, perhaps, of coming forward, if he has any, with explanation or some kind of evidence to offset your prima facie case. You still have the burden of persuasion on pulling his license, correct? Correct, and he did not... I misspoke when I said that he did not shift to him. He did not have an obligation to present anything. Isn't the bigger question, though, whether his continuing prescribing authority is in the public interest? Yes, and then the question... So you come forward and you offer evidence, a prima facie case perhaps, that he misprescribed in the past. He comes forward, though, with at least some evidence that he's had four or so years without any problems of illicit prescription of drugs. He's offered some evidence on this issue of public interest. So did the deputy administrator make a mistake by not adequately weighing his interest or his evidence on the public interest against your evidence on the public interest? No. In fact, the biggest disparity between the administrative law judge and the deputy administrator is that the administrative law judge did not look at the extensive precedent from the DEA that when a registrant has been shown to have acted outside the bounds of appropriate medical practice. And it's not just an issue of improper prescriptions. These are not legitimate prescriptions. There were never any face-to-face meetings with the people that he's prescribing to. E-drugstore did, like Judge Fernandez pointed out, it was a representative sample of the 2,700. There were hundreds of controlled substance doses. Dr. Matthew repeatedly throughout the proceedings tried to minimize what he had done. I think you're correct about that. There was that evidence, but that still kind of begs the question, if someone's been four years without problems, is it still in the public interest to deny him the ability to prescribe? Yes, it is, where he has never acknowledged any wrongdoing in this, and all he has ever done is minimize his involvement. He said he didn't do any controlled substances for the Haynell Meds or the Surin Pharmacy conspiracies, but there was evidence of labels with his name on them, the undercover purchase. He was the prescribing physician. His name is on the spreadsheet. Someone had actually stolen his identification. Would it have been impossible for his name to be on labels? It would not be impossible for his name to be on the labels. What were actually discovered in the trash bowl, these were copies of labels that were used that are supposed to be maintained by legitimate pharmacies for two years for DEA inspections. Instead, they were thrown in the trash in Texas. What evidence? Because you had the actual perpetrator. You could have called, as a witness, the kingpin of that, and he could have clearly said that he was getting paid for all these honey meds. And Dr. Matthew could have called them if they would have assisted his case as well. You had the plea agreement with him, or the United States had the plea agreement. You were in a much better position to call him. But there's no indication that they would not have testified for Dr. Matthew. He never even tried to subpoena them. Presumptively, the U.S. attorney took a proffer from him, didn't he? There were at least 22 people indicted in the Sarandon case. In taking the case, would a U.S. attorney not have a proffer on the case and know exactly what this individual would have said if called? I do not know the specifics of the proffers of the 20-something entities that were indicted in the Texas case, but it is reasonable to assume that they would have testified. If they had given a proffer, you're the one that would best know as to whether they would have implicated Matthews in this. But there's nothing about any of those people that shows that they're exclusively within the United States' control. There's nothing to... No, and he could have called them, but isn't the test more who has realistic access to the individual? Anyone could have had access to them. They had plea agreements. He's subject to a subpoena, obviously, and Matthews could have subpoenaed him. But he still, the test is not whether Matthews could have subpoenaed him. Isn't the test who actually has the nature of a closer relationship with the witness? That is not the test for drawing an adverse inference, no. There has to be shown some special relationship that the witness is particularly under the control of one of the parties, and none of these conspirators were under the particular control of the United States or unavailable. He speculates in his brief. They had a plea agreement. I don't find your argument very... They were involved in the plea. They had a plea agreement, right? They could have cooperated. The government could... DEA could have just said, you guys have to cooperate with us in this replication of Matthews' license or certificate. But there's no issue here. I mean, the DEA is not required to... They were residing... Where did this hearing take place, in California here? This hearing took place in Seattle. Where did these folks live? The Saran prosecution was in Texas, and then there actually began to overlap with the Florida investigation by DEA, which is where Abel Rodriguez and his son-in-laws and a number of the pharmacists were located. He probably would have gone into federal... If he had served the subpoena, he probably would have gone into federal court to get a court order to enforce the subpoena out here. I didn't know he could do that. Well, that's all speculation. He didn't even try. I mean... Well, look. How come he didn't call Matthews at the hearing? They could have called him at the hearing. The DEA... He didn't draw a negative inference against him. Well, he chose not to testify. What was to stop the government lawyers from calling Matthews at the hearing as a witness? Because he would likely be... Let me ask you, is there any regulation, any rule that precluded the government from calling Matthews at the hearing as a witness? No, he had a Fifth Amendment... No, that's not what I said. That's not what I said. I asked you, is there any rule that would have prevented the government from calling Matthews at the hearing? No, Your Honor, and what I was asking... Okay, so what's the basis for drawing an adverse inference against him? Because he did not testify. He did not rebut the prima facie case. What case do you rely on that says that where somebody doesn't testify and they haven't invoked the Fifth, that the adjudicator can draw an adverse inference against them? The best case is the most recent decision from the Tenth Circuit in McKay where the mandate was issued approximately two weeks ago. The decision came out at the end of December. Similar facts as far as a physician who was improperly prescribing, or not even prescribing lawfully, but dispensing controlled substances without any of the appropriate guidelines for legitimate medical practice. No examinations, no follow-up, no counseling, no review of contraindications with other controlled substances, no checks for addiction, no treatment, no making sure that these people you're just giving these controlled substances to are not becoming addicted to them, are not overdosing on them, are not illegally diverting them out into the rest of the public. And in McKay, what happened was he did not testify. The deputy administrator in that decision found that Dr. McKay, that the DEA attorneys had presented a prima facie case, he did not testify. He did not rebut the prima facie case, and the adverse inference was drawn against him. If anything, that case is factually worse than this, isn't it? Well, he was indicted for criminal conduct. He was trading sex for prescriptions. He was trading sexual favors for the prescriptions, yes. Yes. Is there a difference between sexual favors and sex? It was not a, I mean, under the definition of sexual battery, it was somewhat different, but it was still illegal and unethical and improper conduct by Dr. McKay. But in the end, the Tenth Circuit had to look at the overall question as to whether it was in the public interest that he continue, and I think you're correct. They say that his lack of expressed remorse was a factor that the deputy administrator could consider. And one of the issues for that, with respect to looking at the MQAC decision, now one of the penalties that they impose is that Dr. Matthew must have a mentor, but it must be noted that all of the conduct that happened in this, with e-drugstore, with the Saran pharmacies, which led to him being on the spreadsheet listed as the prescribing physician, the trash pull evidence, the undercover purchase, all of that could have happened with a mentor. That could have happened while he's at his house, where his registration was registered. He could have done all of that over the computer at his house. A mentor would not have prevented the conduct that happened in this case. And because of that and because he has failed to, all he has done is minimize what he's done. He minimized the number of controlled substances. And as the deputy administrator pointed out, the math does not, you cannot reconcile his acknowledgement of, to the diversion investigator who made the initial interview of him in September 2005, of how many controlled substances he had done. This $30,000 that he acknowledged making from e-drugstore was during a six-month period. He worked for e-drugstore for longer that period of time. And it was because of the contacts through Abel Rodriguez with e-drugstore. To answer your question, Judge Gwinn, about the alleged identity theft, that's how Abel Rodriguez came in contact with Dr. Matthew. And then following that contact, Abel Rodriguez reached out and said he would give him $30 to $35 per controlled substance. Dr. Matthew flies to Florida and meets with him. Rodriguez comes up to Seattle to meet with him. When did the flight occur? That happened in, I believe it was in mid to late 2004. And then when did he come under the sanction of the Washington State? When was the first sanction? He wasn't under sanction at the time he flew to Florida, was he? No. No, he was not under sanction. And the, actually the MQAC investigation began shortly after that. So he was involved, you know, with two separate organizations. But that all kind of, on this bigger issue of abuse of discretion and best interest of the public, that all occurred before he started kind of this mentorship. But it's also, what is significant and what the Deputy Administrator properly looks to is, has he acknowledged that he did something wrong? Has he admitted that the conduct was wrong? So that that way, she can safeguard the public interest to make sure that he recognizes his wrongdoing and he's not going to do it in the future. Now, I understand. What's he been doing recently? As far as I know, he's still working with a mentor. When can he apply again? He could apply tomorrow. He could apply at any time. So should we consider the fact that it's been eight years since the last bad conduct that at least has been discovered and that there's not been problems since then? I mean, that is something to consider. But, again, it's a very deferential review of the Deputy Administrator's decision and whether it was arbitrary and capricious, whether there is a reasonable basis based on agency precedent, based on similar conduct by other registrants. And we submit that this was not arbitrary and capricious, that when you review it under the very deferential standard, the Deputy Administrator acted appropriately because she found that Dr. Matthew did not have any semblance of legitimate medical practice with e-drug store or with any of the Saran pharmacies and posed a great danger to the public by sending out hundreds and hundreds of controlled substances. Even with e-drug store where he tries to minimize that and say, well, they're Schedule IV, it's fentramine, a diet drug. That's a stimulant, the most addictive type of controlled substance. With the Saran pharmacy, 93% of their controlled substance prescriptions were for hydrocodone, which is one of the most lethal types of controlled substances. You're over your time. Thank you. Thank you very much. I just have a couple of points. On the McKay case, I think the Court realizes that it's quite a different case, and it's different not only in terms of the conduct or misconduct, but in the approach toward the physician's failure to testify. I've read the reply brief that was submitted to the Tenth Circuit on behalf of Dr. McKay, and in that reply, they rely on – they basically concede that Dr. McKay asserted the Fifth Amendment, and they rely on such cases as Spivak v. Klein and Garrity v. State of New Jersey and argue that the DEA could not penalize Dr. McKay for failing to testify because he had taken the Fifth Amendment and it was burdening his Fifth Amendment right. And as is stated in this case, there was never any request to call Dr. Matthew by the agency. Did he ever threaten to assert the Fifth? No. And I do believe he would have testified if he'd been called by the agency. Why didn't he call himself? All the reasons that we've presented in this argument, Your Honor. We're just talking about adverse arguments. Yeah, well. Adverse witnesses. People who have false evidence that there should be adverse influences. A burden of persuasion must mean something, and in this case it means that the haynail or honey meds evidence should not have been considered as aggregating the violation of Dr. Matthew. Dr. Matthew has now been eight years, as Judge Glynn pointed out, eight years without a problem. And in some ways you kind of make their argument for them. You practice the way you think is appropriate, but wouldn't it have been better for you to just simply say even if he was involved in honey meds, it was kind of a limited involvement, it all predated this. But he sounds like he's continuing to take the position that there was no connection whatever, either in allowing his identification to be misappropriated or more direct involvement. We support the administrative law judge's conclusion that he definitely was remiss in failing to protect against the misuse of his identification that did occur through haynail meds. We don't deny that. And what we want is... Is he practicing medicine today? Yes, he is. He just can't write prescriptions. That's correct. He's under the mentorship of a physician up on the Olympic Peninsula in Sequim, Washington. He's still under supervision of the Medical Quality Assurance Commission, as Ms. Gay pointed out to me earlier. Technically that could end fairly soon. It was three years from March of 2009. However, he hasn't yet complied with all their requirements, one of which was to take and pass the board examination for certification in internal medicine. But the board, the Medical Quality Commission, is having reviews with him. We were last before the commission in November. They were very supportive of him and feel that he could be trusted. Okay. This license is vital, and we know the court understands that. We want it to be remanded so the DA can take another look at the case. Okay. Thank you. The matter is submitted. Thank you, counsel, for your arguments. We appreciate your arguments.
judges: Gwin, Fernandez, Paez